ABRAM BLOCK, S. FURTH and EMANUEL BLOCK, Respondents,
    *v.* THE COLUMBIAN INSURANCE COMPANY, Appellants.

The plaintiffs delivered gold to N. Bros. of San Francisco, to be shipped to New York. N. Bros. shipped the same by bill of lading in the name of S., directed to N. Bros. at New York, and by the same steamer, sent a memorandum of the gold, with an order upon their consignee, indorsed thereon, directing the delivery of the gold to C., the plaintiffs' broker. The plaintiffs held an open policy of insurance from the defendant, insur-

Statement of case.

ing C. on their account, upon gold "consigned to C. by regular invoice and bill of lading." This policy also provided that risks should be reported for indorsement, as soon as known to the assured. On receipt of a telegram from the plaintiffs, announcing the shipment of the gold in question, "under bill of lading from N. Bros. to N. Bros.," C. showed the same to the president of the defendant, calling his attention particularly to the language thereof, who said "it did not make any difference," and directed him to the entry clerk, by whom this risk was then indorsed upon the policy. The defendant afterward received the premium upon this risk.

*Held,* that the policy of insurance covered this gold. It was shipped "by regular invoice and bill of lading," and the order of the shipper in favor of C. was, in effect, an assignment of the bill of lading, equivalent to a consignment to C.

*Held,* further, that evidence of the conversation with the president of the company, and of the entry of the risk was competent, to charge the defendant with knowledge of a custom among shippers of gold to unite consignments of small amounts and ship them in the name of one person, to secure the benefit of a lower rate of freight; and that this risk was accepted upon the shipment so made, with reference to that custom.

*Held,* further, that the receipt of the premium by the defendant was a ratification of the act of its president in recognizing this risk as covered by the insurance.

(Argued March 30th, 1870; decided June 23d, 1870.)

APPEAL from a judgment entered upon the decision of the General Term of the Superior Court of the city of New York, affirming a judgment entered upon a verdict in favor of the plaintiff, by direction of the court.

The action was upon a policy of insurance. The defendant is a corporation, created by the laws of this State, and engaged in the insurance business in the city of New York. The plaintiffs are merchants, resident in the city of San Francisco, and had brokers or agents in the city of New York by the name and style of H. Cohen & Co., by whom the policy of insurance was procured in the city of New York, which purports to have been made July 15, 1862. The policy is what is called an open policy. Upon its face it has the indorsements following:

"H. Cohen & Co., on account of A. Block & Co., and consigned to H. Cohen & Co. by regular invoice and B.

lading. In case of loss to be paid to H. Cohen & Co. San Francisco via Isthmus to New York on specie, gold in bars, &c. Sum insured $50,000. Steamers sailing from and after July 1, 1862. Prem. $750. Risks applicable hereto to be reported to this company for indorsement on the policy as soon as known to the assured."

The plaintiffs, on the 19th of July, 1862, shipped at San Francisco, by the steamer The Golden Gate, which sailed on the 21st, $13,579.79 in gold bars. The bars were shipped in the name of Levi Strauss & Co., by a firm in San Francisco by the name and style of Newstadter Brothers, directed to Newstadter Brothers, New York, with directions to deliver the same to H. Cohen & Co. in New York. The bill of lading, signed by the captain of the steamer, receipted as "shipped in good order, etc., by Levi Strauss & Co., by Golden Gate, etc., two packages weighing gross, and said to contain $37,800; marked, sealed and numbered as in margin, to be delivered unto Newstadter Brothers, or to their assigns in New York."

Accompanying the gold bars was an invoice, with directions from Newstadter Brothers, of San Francisco, addressed to Newstadter Brothers, New York, as follows : "Shipped by A. Block & Co.; to be delivered to H. Cohen & Co., New York;" with directions signed by them, "please deliver as above directed."

It appeared in proof at the trial that the charges for shipping treasure at San Francisco, in amounts less than $30,000, were two per cent freight and five per cent primage, in consequence of which it was the custom there, among merchants who had smaller sums than $30,000 to ship, to club together and have them shipped in the name of one person and in one shipment; the charges on $30,000 and upward being one and one-half per cent freight and five per cent primage, thus making a saving of fifty cents on $100. For this reason the plaintiffs shipped the amount of gold bars in question in that manner, and delivered the same to Newstadter Brothers, to be shipped by them, with the treasure of other parties, in an amount exceeding $30,000. The

Golden Gate left San Francisco the 20th July, and was lost before she reached Panama. As soon as plaintiffs heard of her loss, they telegraphed to Cohen & Co., by message dated August 6th, and received in New York August 7th, as follows :

" To H. COHEN & Co.,

"Nos. 31 and 33 Dey street, New York:

" Shipped July 21, under bill of lading of Newstadter Brothers to Newstadter Brothers, twelve thousand dollars. Insured under our policy with Columbian Insurance Company.          Signed,          A. BLOCK & CO."

On receipt of the telegram, Cohen & Co. sent a clerk with it to defendant's office. He showed the same to the president of the insurance company, calling his attention to the language of the telegram, who said "it made no difference," and directed him to the entry clerk to have the matter entered in a book kept for the entry of risks, when reported, instead of indorsing the same upon the policy. The defendant's clerk thereupon made the following entries :

"*August* 7, 1862—Golden Gate, from San Francisco to New York; treasure, $12,000; rate of premium, one and a half per cent; premium, $180."

This premium, it appears, was afterward paid in account with the company. The company held premium notes of Cohen & Co., and this premium was charged by the company against the notes, and a return premium of fifteen per cent in cash paid them in lieu of scrip. The action was tried in the Superior Court in New York, where these facts appeared.

The defendant's counsel, at the close of the case, moved for a nonsuit, which motion was denied, and the counsel duly excepted.

The court then directed a verdict for the plaintiff for $4,224, upon which judgment was entered up, which was affirmed at General Term, and defendant appealed to this court. The case in the Superior Court is reported, 3 Robt., 296.

*Thomas G. Shearman*, for the appellant, cited Pars. Mer. Law, 137; Burrill's & Bouvier's Dict., Bill of Lading; Jacobsen's Sea Laws (by Frick), 196; *Shearer* v. *La. Ins. Co.* (14 La. Ann., 797); *Sweet* v. *Barney* (23 N. Y., 335); *Stilwell* v. *Staples* (19 N. Y., 401); *Waters* v. *Monarch Assur. Co.* (5 Ell. & Bl., 870); *McGregor* v. *Ins. Co.* (1 Wash. C. C., 39); *Smith* v. *Wright* (1 Caines, 43); *Dawson* v. *Kittle* (4 Hill, 107); *Rogers* v. *Mechanics' Ins. Co.* (1 Story, 603); *Macy* v. *Whaling Ins. Co.* (9 Metc., 354); *Bartlett* v. *Purtland* (10 Barn. & Cress., 760); *Sweeting* v. *Pearce* (9 C. B. N. S., 534); *Dykers* v. *Allen* (7 Hill, 496); *Hall* v. *Jansen* (4 Ell. & B., 500); *Blackett* v. *Roy Exch. Ass. Co.* (2 Cr. & J., 244); The Reeside, 2 Sumner, 567; 2 Pars. on Cont., 5th ed., 545; *Robertson* v. *Western Ins. Co.* (19 La., 227); *Bryant* v. *Com. Ins. Co.* (6 Pick., 131); *Wallace* v. *Fouche* (27 Miss., 266); *Coons* v. *Chambers* (1 Abb. Pr., 165; *Pollen* v. *Le Roy* (30 N. Y., 549; *Lamatt* v. *Hudson R. Ins. Co.* (17 N. Y., 199, note); *Alston* v. *Mich. Ins. Co.* (4 Hill, 329); *Hovey* v. *Am. Ins. Co.* (2 Duer, 554); *Bentley* v. *Columbia Ins. Co.* (17 N. Y., 421); *Claflin* v. *Farmers' Bank* (25 N. Y., 293); *New York Central Ins. Co.* v. *National Ins. Co.* (14 N. Y., 85); *Conkey* v. *Bond* (34 Barb., 276); *Bush* v. *Hewett* (4 N. Y. Leg. Obs., 384); *Moore* v. *Hitchcock* (4 Wend., 292); *Kelley* v. *Upton* (5 Duer, 336).

*Stephen P. Nash*, for the respondent, cited 1 Burrill Law Dict. Titles, " Consign," " Consignee," " Consignment;" *Price* v. *Powell* (3 Comst., 322); *Sweet* v. *Barney* (23 N. Y., 335); *Grove* v. *Brien* (8 How. U. S., 429); *Ruan* v. *Gardner* (1 Wash. C. C., 145, 150); *Burr* v. *The Broadway Ins. Co.* (16 N. Y., 26); Pars. Merc. Law, 437; 1 Phil. on Ins., § 430; *N. J. Nav. Co.* v. *Merchants' Bank* (6 How. U. S., 344); *Stoddart* v. *L. I. R. R. Co.* (5 Sandf., 180); *Dows* v. *Greene* (24 N. Y., 638); 32 Barb., 490; *Bidwell* v. *The N. W. Ins. Co.* (24 N. Y., 302); *Galen* v. *Brown* (22 id., 37); *Steffens* v. *Collins* (6 Bosw., 223); *Colbourn* v. *Dawson* (1 J. Scott, 70 E. C. L., 765); *Almgren* v. *Dutilh* (1 Seld., 28); *Liddle* v.

*Market Ins. Co.* (4 Bosw., 179; S. C. on Appeal, 29 N. Y., 184); *Wittaker* v. *Farm. Ins. Co.* (29 Barb., 312); *Holbrook* v. *Barret* (5 Bosw., 147).

E. DARWIN SMITH, J. The motion for a nonsuit was based particularly upon the ground, that it was not shown that the gold in question was consigned to H. Cohen & Co., by regular invoice and bill of lading; and this presents the only question raised by the defendant for the consideration of this court. There being no dispute about the facts of the case, this question arises and depends upon the proper construction of the policy. The construction of all written instruments is to be made in view of the extrinsic facts and circumstances to which they relate, and which were within the purview of the parties at the time of their execution. From the face of the policy and the attending facts and circumstances to which it relates, it is quite apparent that it was designed to insure the plaintiffs against the loss of such treasure, in the shape of specie and gold bars and other goods, as they might from time to time ship by steam vessels from San Francisco to Cohen & Co., New York.

The gold bars sent and lost, and in question in this action, were within the general scope and intent of the contract. They were sent by the plaintiffs from San Francisco by a steam vessel, and the same were, on their arrival in New York, to be delivered to the plaintiffs' brokers, H. Cohen & Co. The substance and intent of the contract thus far covered the precise loss which occasions this action, and such loss is of the very kind and nature to come in the precise mode contemplated by the parties in taking and giving the policy. The simple question, then, is whether the clause in the policy *" consigned to H. Cohen & Co., by regular invoice and B. lading,"* rendered the policy inapplicable to any gold not directed in the bill of lading to be delivered to H. Cohen & Co. Upon the face of the bill of lading, the gold in question clearly was not so consigned.

The object of this provision in the policy was, undoubtedly,

to cover shipments exclusively to be made by the plaintiffs to Cohen & Co. By the consignment to them a benefit was secured to Cohen & Co., as members of the defendant's company; for it appears that the premium of $750, specified in the policy, was secured by their premium notes. And also to exclude all money shipped in any other mode than by such consignment by bill of lading to Cohen & Co., so as that they would receive the money on its arrival in New York. Another object was to cut off all chance for fraud and false claims, as the policy was an open one, and all mistake in respect to the identity or certainty of the amount of treasure shipped.

Now I do not see why the end and object, sought to be secured by this provision in the policy, is not completely secured by the shipment of this gold in the manner adopted by the plaintiffs. It was embraced in a bill of lading, consigned nominally to Newstadter Brothers, in New York, but invoiced as the property of the plaintiffs, with directions to Newstadter & Brothers, in New York, to deliver the same immediately to Cohen & Co., which was an effectual consignment of said gold to Cohen & Co., and entitled them to receive the money on its arrival, and identified the same without any chance for fraud or mistake. The amount of the gold was covered by and included in the bill of lading, and the same was embraced in the two items of gold in bars specified on the face of the bill of lading, as consigned to Newstadter & Brothers, New York. The consignment by plaintiffs to Cohen & Co., with the invoice accompanying said gold bars; and included in the consignment by the bill of lading to Newstadter & Brothers was, it seems to me, sufficient to satisfy the terms of the policy. The bars were consigned to them, and they were entitled to receive them by force of such consignment, immediately on the arrival of the same in New York. The same were shipped in the manner customary at San Francisco, where the amount was less than $30,000. There is no evidence that this was not done with the full knowledge and consent of the carrier; and it is not proved that the

defendants were ignorant of the custom prevailing at San Francisco, in respect to the shipment of treasure, and I think, they should be presumed to know the usage pertaining to this particular class of shipments at that port. And in this view, the shipment and the risk are clearly within the policy.

But upon a question of this kind, and indeed where the construction of written instruments is in doubt, the acts and conduct of the parties may be referred to, and are generally considered by the courts, in giving a construction to such instruments. Upon this ground, I think the proof of the acts of the defendant's president, in respect to the case in question, were properly received in evidence at the trial. It is proved, and not denied, that immediately upon learning of the loss of the Golden Gate, the plaintiffs telegraphed to Cohen & Co., as follows:

"Shipped, July 21st, under bill of lading of Newstadter Bros., to Newstadter Bros., $12,000 insured under our policy with the Columbian Insurance Company.

"(Signed)                H. BLOCK & Co."

That this telegram was immediately taken by a clerk of Cohen & Co., to the defendant's office, and shown to the president of said company, and his attention particularly drawn to the language of the telegram; when he said, "it made no difference." The meaning of this remark was, that the shipment under the bill of lading to Newstadter & Co., made no difference, and that it was the same in effect, as if the bill of lading had been in favor of Cohen & Co. upon its face, in respect to said gold.

Such was the practical construction of the bill of lading, in connection with the policy, made immediately by the president of the defendant's company on hearing the facts. But he went further and directed the witness to the entry clerk to have the matter entered as upon the policy, in conformity with its terms of direction to report the loss immediately to the company, and thereupon the said entry clerk made, at the same time, the following entry:

"August 7, 1862. Golden Gate from San Francisco to New York; treasure $12,000, rate of premium one and a half per cent. Premium $180."

I do not see why this was not a distinct and practical recognition and acceptance by the defendants of the loss as properly sustained, and comes under said policy upon their own construction of the law; I do not see, therefore, why we may not adopt the same construction of their policy that was put upon it by the president of the defendant's company, not as an alteration or modification of the contract, but as the true construction of the same, according to the intent, meaning and understanding of the parties.

This view is fortified by the further fact, proved at the trial without objection or exception, that the defendant's company afterward received payment of the said sum of $180, the premium on such gold under said policy. The witness testified expressly that this sum of $180 was afterward paid in account; that the company held an insurance note of Cohen & Co., and their premium was charged against the note, and sometime afterward the company returned them fifteen per cent of their premium of $180 in cash, and the amount due Cohen & Co. for return premium was settled, including their $180 premium.

I do not see why the payment was not a ratification of the act of the president in recognizing the risk and loss as covered by the policy; why it does not preclude the defendant from setting up any defence to said policy.

I think the judgment should be affirmed.

Grover, J. The testimony of the witness Rumberg, the clerk of Cohen & Co., showing the conversation between him and the president of the defendant, at the time he exhibited to the latter the telegram giving an account of the loss, was competent for the purpose of showing that the defendant, at the time of writing the policy, knew of the course of business prevailing among shippers of specie and gold bars at San Francisco to unite the amount to be shipped by each

respectively, when such amount was less than $30,000, so as to make the .sums when united exceed that amount, thus securing to each the benefit of the reduced rate of freight on the larger amount. Such course was proved in this case, and that the bars in question were shipped in accordance therewith. The testimony in question, uncontradicted and unexplained, proved that the defendant knew of such course, and that the policy was made in reference thereto. It was not offered to prove a modification of the policy or a waiver of any of its conditions or stipulations by the defendant. The objection to the' testimony was therefore properly overruled. The only remaining question raised upon the trial was, whether the policy covered the bars in question. By the policy, which was an open one, the defendant insured H. Cohen & Co. on account of A. Block & Co. (the plaintiffs), and consigned to H. Cohen & Co., by regular invoice and bill of lading, from San Francisco to New York, on specie, gold bars, &c.. at a rate of premium therein specified, by steamers, via the isthmus, &c. The bars in question were shipped by the plaintiffs, in pursuance of the course of business existing at San Francisco, together with other shippers, who unitedly shipped more than $30,000, which, by the bill of lading, was all consigned to Messrs. Newstadter & Brothers, New York, the plaintiffs taking an order from the persons in whose name it was shipped upon Newstadter & Brothers, the consignees in New York, for the delivery of the bars in question to Cohen & Co. upon their arrival in New York. The plaintiffs forwarded this order by the steamer to Cohen & Co., and the same (together with the bars) was lost by the burning of the steamer, which was one of the perils covered by the policy. It is insisted by the counsel for the defendant that, as the bars were not, by the bill of lading and invoice, consigned by the plaintiffs to Cohen & Co., they do not come within the description of property insured by the policy. That the object of the clause, describing the property insured as being such as was consigned to Cohen & Co., by regular invoice and bill of lading, was to protect the

defendant from the fraud of the assured in neglecting to report such shipments as arrived safely, as no intelligence of the shipment would be received in New York prior to such arrival, as such intelligence was forwarded by the same steamer upon which the property was shipped. In the absence of the proof of the usage of making shipments of this kind at San Francisco, and of knowledge thereof by the defendant, this argument would be entitled to great weight, but the proof in question entirely destroys its force. The limit fixed by the policy to the amount of risks upon any one steamer (not exceeding $10,000), furnishes an argument of some force against the position of defendant's counsel. It is true that, if plaintiffs wished to ship more than $19,000 by any one steamer, they could have procured additional insurance from other companies. Yet this limitation furnishes an inference that it was anticipated that plaintiffs' shipments would generally consist of sums less than $30,000, and those acquainted with the difference between the charges for freight upon sums below that amount and upon that amount and upward, and of the course pursued by those wishing to ship the smaller amount, to secure to themselves the benefit of the lower charges, could scarcely have expected the plaintiffs to ship otherwise than they did in the present case. In a popular sense, the bars were shipped by the plaintiffs, consigned to Cohen & Co., by regular invoice and bill of lading. They were shipped by plaintiffs and the order received by them from the shipper upon the consignee named in the bill of lading, embracing an invoice of the bars, and directing their delivery by him to Cohen & Co. for their use, was in effect an assignment of the bill of lading and a consignment of the bars to Cohen & Co. by the plaintiffs. Consignment imports the sending to or transferring or delivering of property by one into the possession of another. The requisite of the policy, that the property covered by it must be consigned by a regular bill of lading, it is obvious from the facts in this case, was not intended to protect the defendant from the fraud of the

assured in evading the payment of premiums, but to insure the greater security from loss of property so shipped beyond that shipped without such a document. This security was obtained to its fullest extent in the present case, and thus the defendant enjoyed all the benefit intended to be derived from the clause in question. The receipt of the defendant of the premium, with full knowledge of all the facts, and declaring the plaintiff entitled to his private dividend upon its payment, corroborates this view of the case. The judgment appealed from must be affirmed with costs.

All concur for affirmance.

Judgment affirmed.