### STORM *et al. v.* PHENIX INS. CO.

*(Supreme Court, General Term, Fourth Department. July, 1891.)*

**1. INSURANCE—ACTION ON POLICY—CONFLICT OF TESTIMONY.**
In an action on a fire insurance policy, wherein the defense was that plaintiffs failed and refused to furnish invoices of the goods lost, as required by the policy, and plaintiffs' reply was that all of their books, papers, bills, and invoices had been destroyed in the fire, and that defendant's adjuster had, in a conference with one of the plaintiffs, waived the procurement of more definite information than plaintiff himself could furnish, as to whom the goods were purchased of, which reply was supported by plaintiff's testimony, and contradicted by that of the adjuster, *held*, that the court would not interfere with the verdict of the jury giving credit to plaintiff's testimony.

**2. SAME—EVIDENCE—RELEVANCY.**
The defense being that the fire was fraudulently caused by plaintiffs, one of the plaintiffs, who had been examined as to the quantity of goods in the store, and cross-examined with the view of weakening his statements, was properly allowed to answer the questions, "Do you know how much capital you put into the business?" and, "Did you meet with any loss of any consequence between the time you commenced business and the fire?"

**3. SAME—ADMISSIBILITY.**
    The policy having provided for loss "on stock of furniture and sewing-machines contained in a 1½ story building," it was proper to permit a witness to state what kinds of property were carried or kept in stock by furniture dealers in country stores of that character.

**4. SAME—HARMLESS ANSWER.**
    One of defendant's agents was asked, on cross-examination, whether it was his observation that people were generally ignorant of the conditions of their policies, and his reply was: "1 don't find them all that way; I find some people that probably were." *Held*, that defendant could not complain of the action of the court in overruling its objection thereto, since it could not be prejudiced by the answer made.

**5. SAME—INSTRUCTIONS.**
    The charge of the court to the jury, with respect to defendant's claim of fraud and false-swearing on the part of plaintiff, "Of course, when you come to the question of fraud or false swearing, it must be intentionally wrong and not a mistake," was not objectionable.

**6. SAME—FAILURE TO PRODUCE WITNESS.**
    One of the plaintiffs testified that on the evening of the fire he left the store with a certain person, who resided about 18 miles distant. *Held*, that plaintiffs' failure to produce such person as a witness was not sufficient ground to interfere with the verdict.

Appeal from circuit court, Jefferson county.

Action by John Storm and Charles Pierce against the Phenix Insurance Company of Brooklyn. May 8, 1888, the appellant issued to the respondents its policy of insurance for the term of one year, "in the sum of $500, on stock of furniture and sewing-machines contained in the one and one-half story frame building situated on the south side of Main street, Lafargeville, Jefferson county, N. Y." The complaint alleges that on the 29th day of August, 1888, the plaintiffs owned and had in the building a stock of furniture and sewing-machines of the value of $1,639.38, and that the property was wholly destroyed by fire on that day, and that due notice of proofs of loss were given to the defendant. Defendant's answer denied the allegations of the complaint, and alleged that after the fire the defendant had demanded an invoice of the goods and property claimed to have been destroyed, or certified copies thereof; and that the plaintiffs had failed and neglected to furnish the same, or to furnish the defendant with the names of persons from whom the said goods and property were purchased; and that plaintiffs were guilty of fraud and false-swearing in their proofs of loss in stating the amount of such loss as upwards of $1,600; and that the fire by which the property was destroyed was caused by the act or procurement of the plaintiffs, with design and intent to destroy the property covered by the policy of insurance, and injure and defraud the defendant out of the amount of such insurance. Verdict for the plaintiffs for $535.94, and the jury say "that, in fixing the value of the property, they include all the items in exhibit 35, at the prices therein stated, excepting No. 135, 40 yards of rag carpet, $20, and item No. 180, twelve bottles of sewing-machine oil, $10, which are not included." From a judgment entered on a verdict, and from an order denying a motion for a new trial, made upon the minutes of the court, defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*A. H. Sawyer*, for appellant.   *Watson M. Rogers*, for respondents.

HARDIN, P. J.   Appellant insists that a recovery in this action could not be had "by reason of plaintiffs' failure to furnish invoices or bills of purchase of the property claimed to have been destroyed by fire, or certified copies of such bills or invoices, or to render any excuse for such failure, and the trial court should have directed a verdict as requested in favor of the defendant at the close of the proofs." The policy contained a provision as follows: "The insured, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof, if originals be lost, at such reasonable place as may be designated by this company

or its representative, and shall permit extracts and copies thereof to be made."
By the evidence it appears that the plaintiffs' books of account, bills, invoices,
and other vouchers were totally destroyed by the fire, and that they had no origi--
nals or certified copies thereof.    These facts were communicated to Marshall,
the agent of the defendant, who visited the scene of the fire the day following
its occurence.    These facts were also communicated to Mr. Camp, an ad-
juster and general agent of the defendant, who, a few days after the fire, in
company with Mr. Strong, visited the premises to look into the matters per-
taining to the loss.    On that occasion the plaintiffs made up and gave to
Camp a rough statement of their loss, which he took and carried away with
him and retained.    Subsequently, and on the 13th of October, formal proofs of
the loss were made and served upon the defendant, in which it was claimed
that the total loss was $1,639.38.    Some correspondence took place in respect
to the invoices, and in respect to names of houses where the goods were
bought, and assurances .were given to the plaintiffs that Camp would return
to Lafargeville, and further investigate the matter.    In the month of Febru-
ary, 1889, Camp went to Lafargeville, and had an interview with the plaintiff
Storm, who offered to go after Pierce and get him, stating that Pierce could
furnish more information in regard to the matter; and in reply thereto Camp
said he could get all the information he wanted of Storm.    In regard to what
took place at that interview Storm testifies: "We were in the sitting-room
there all that afternoon, inquiring about such and such goods; where they
were purchased.    I told him if he would wait until I could drive over and
get Pierce I thought he could give him more information in regard to it than
I could, but he said he thought he could get all he desired from me.    He
took his list out, and inquired where such and such articles were bought, and
I told him as near as I could.    I gave him the names and residences of the
persons that we bought of, as well as I was able.    I did not tell him at that
time, or at any time, that I could not furnish vouchers for all, and I would
not furnish him any.    I never said anything of that sort.    I gave him all the
information it was possible for me to give.    *   *   *   He told me that he
thought I could furnish him all the information he wanted.    That was after
I had proposed to go and get Pierce.    I then gave him what information I
was able to.    After that he did not tell me that that was not enough, or any-
thing of that sort.    I did not hear from him from that time, nor see him, nor
have any letter from him.    *   *   *   Mr. Camp asked me as many as five
or six times how much I would be willing to take, but he never made any
proposition to me, or how much he would give me.    I did not say to him that I
would have $500 or none.    I told him I would take $500.    If there was any-
thing to be deducted from that, it was for him to suggest, not I."
    The evidence which we have quoted is in conflict with the evidence given
.by the defendant.    It is insisted very earnestly in behalf of the appellant that
the evidence did not warrant the court in submitting to the jury the question
whether the defendant had waived a strict compliance with the provisions of
the policy.    It is inferable from the interviews that the defendant recognized
the validity of the policy.    In *Titus* v. *Insurance Co.*, 81 N. Y. 419, it was
said: "But it may be asserted broadly that if, in any negotiations or trans-
actions with the insured, after knowledge of the forfeiture, it recognizes the
continued validity of the policy, or does acts based thereon, or requires the in-
sured by virtue thereof to do some act or incur some trouble or expense, the
forfeiture is, as matter of law, waived; and it is now settled in this court,
after some difference of opinion, that such a waiver need not be based upon
any new agreement or an estoppel."    That case follows the doctrine laid down
in *Goodwin* v. *Insurance Co.*, 73 N. Y. 480, in which latter case it was said:
"Nor is it deemed essential that the waiver should be explicit and pointed in
its application."    The doctrine of the case just cited was approved in *Roby* v.
*Insurance Co.*, 120 N. Y. 517, 24 N. E. Rep. 808, and upon the facts disclosed

in the latter case it was held that the question of waiver was properly submitted to the jury. If the defendant had stood upon the correspondence, and no personal interviews had taken place between the plaintiffs and the agent of the defendant, the case would be more like *O'Brien* v. *Insurance Co.*, 63 N. Y. 111. In the trial of that case no claim was made "that a compliance was impossible, or that the defendant had waived it," and the court observed that the question of waiver was made for the first time on appeal; and the court further observed: "Had that been the contention at the trial, it would have been a question of fact for the jury. The cause was tried upon that theory." We think, therefore, the case in hand differs from the *O'Brien Case.*

In response to a request by the defendant's counsel, the court charged the jury that, "unless the evidence establishes the proposition that Camp deliberately intended to withdraw, and not insist upon his requirement that the plaintiffs should furnish such certified copies of invoices," the jury could not find a waiver. We think this submission was as favorable to the defendant as it was entitled to.

2. We think it was for the jury to determine whether credence should be given to Storm, as a witness, or to Camp, the agent of the defendant. After Pierce, one of the plaintiffs, had been examined at great length in respect to the quantity of goods in the building at the time of the fire, and had been cross-examined exhaustively, with a view of belittling his statements and questioning the extent of the property consumed, in re-examination he was permitted to answer the following question: "Do you know how much capital you and Storm put into the business?" This question was objected to as immaterial, and the defendant took an exception. After a careful perusal of all his evidence preceding the question, we are not prepared to say that the inquiry was immaterial. We therefore disregard the exception. The same witness was asked: "Did you meet with any loss of any consequence between the time you commenced business and the fire?" This was objected to as incompetent. The witness, prior thereto, had been cross-examined upon the theory that the fire was a dishonest one, and, considering the wide range of the cross-examination, we think the admission of the fact that there had been no loss in business prior to the fire was not improper.

3. A witness was permitted to state what kinds of property are carried or "kept in stock by furniture dealers in country stores of that character." The language employed in the policy was, "on stock of furniture and sewing-machines contained in a one and one-half story building." Notwithstanding the objection to the evidence, we think it was admissible. *Hall* v. *Insurance Co.*, 58 N. Y. 292; *Wall* v. *Insurance Co.*, 14 Barb. 383; *Pindar* v. *Insurance Co.*, 36 N. Y. 648. It is said in Flanders on Fire Insurance, at page 72, viz.: "The courts endeavor to give effect to the intention of the parties in construing policies of insurance. Hence, in ascertaining what they were designed to cover, they look at their general scope as well as at the collocation of the particular words; and, as the language of an insurance policy is the language of the company, and they can, therefore, provide for every proper case, it is to be taken in a sense most favorable to the assured." And in *Rolker* v. *Insurance Co.*, 4 Abb. Dec. 82, it is said the insurers "should be held to have extended the most liberal meaning of which the language is reasonably susceptible, as it was chosen by themselves." In *Hall* v. *Insurance Co.*, *supra*, Judge GROVER said: "It is an elementary rule that underwriters are to be assumed to know the usual course of conducting business in connection with which they issue policies. Hence when a policy is issued upon a stock of goods in a specified business, the underwriter is presumed to know what goods are usually kept by those engaged in that business."

4. In the course of the cross-examination of one of the defendant's agents, he was asked to state whether, in his observation, he had "found the people are

generally ignorant of the conditions of their policies." This question was objected to as incompetent, and the objection was overruled, and the defendant took an exception. The answer which the witness made was as follows: "I don't find them all that way; I find some people that probably were." It is difficult for us to see how the defendant was prejudiced by that evidence. The witness stated no fact not generally known and understood, or which does not frequently come to judicial notice.

5. It is insisted in behalf of the appellant that the "plaintiffs were guilty of such misrepresentations, fraud, and false-swearing in reference to the loss that they ought not to be allowed to recover in this action for that reason alone." In the course of the charge of the learned trial judge upon that subject he observed: "Of course, when you come to the question of fraud or false-swearing, it must be intentionally wrong, and not a mistake." The charge seems to be in accordance with the decision of this court in *Dolan* v. *Insurance Co.*, 22 Hun, 397.

6. It is insisted in behalf of the appellant that evidence was given upon the trial tending to show the "origin of the fire was fraudulent," and the answer contained a charge that the plaintiffs "set the fire which destroyed their goods." The plaintiffs gave evidence to the contrary. One of the plaintiffs testified that on the evening of the fire Dr. Potter was with him in the store, and he left the store with the plaintiff when he left, and he was not produced as a witness, although he resided some 18 miles distant; and the position of the learned counsel for the defendant is that the failure to produce Dr. Potter must be taken as a circumstance against the plaintiffs. However, the circumstance is not conclusive. Counsel calls our attention to *Newman* v. *Cordell*, 43 Barb. 455. In that case it was said: "The absence of evidence which it is clearly in the power of the party to produce is often as effective in disposing of a case as testimony of a positive character." The force and effect to be given to the circumstance that Dr. Potter was not called was for the jury to consider. We may not regard his absence as a sufficient ground to interfere with the verdict. All that is said in *Bank* v. *Dreyfus*, 14 Wkly. Dig. 160, is that, under such circumstances, the failure to produce evidence available to a party is to be taken strongly against him. It is not a conclusive circumstance. We must assume the jury gave proper weight to it.

7. It is suggested by the learned counsel for the appellant that it was "expressly provided by the policy that pictures, which would cover both paintings and chromos, should not be covered unless liability was specifically assumed thereon by the policy." We have not found the policy set out in the case. We are of the opinion that the question as to the extent of the damages was properly submitted to the jury for their determination, and that their verdict should be accepted. Judgment and order affirmed, with costs. All concur.