## FORSTER v. INSURANCE CO. OF NORTH AMERICA.

Civil Action No. 3090.

District Court, E. D. New York.

June 25, 1943.

See, also, 48 F.Supp. 1023.

Max Ornstein, of New York City, for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (George S. Brengle and Henry J. Bogatko, both of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is an action brought by the plaintiff, to recover back premiums, voluntarily paid by the plaintiff to the defendant for insurance on shipments declared under an open marine cargo policy and an open war risk policy, which shipments, it is now claimed, were not in fact insured, because they were not within the coverage of the open policies.

The voyages have been terminated, the cargoes delivered, except the one that was lost, for which payment was made, and the policies cancelled about two years before this action was instituted.

The plaintiff, in 1939, on his application, received from the defendant two open cargo policies, one insuring against marine risks, and the other against war risks.

The policies constituted separate contracts, but the war risk policy covered only shipments which were insured under the marine policy, and it was therein agreed that "the description of such shipments, the valuation thereof, the designation of the overseas Vessel on which they are to be carried and of the ports of loading and discharge, as reported under the said Policy against marine risks shall be deemed incorporated herein."

The marine policy, by its terms, insured "Merchandise consisting principally of fur cuttings."

To bring any particular shipment within the coverage of the open policies, declarations were necessary.

The open policies, as originally written, insured only merchandise shipped from ports and from places in the United States to ports and/or places in the United Kingdom and continent of Europe (excluding Russia).

By rider, attached to the marine policy, dated January 2, 1940, it was provided: "Effective as to all shipments made on and after December 27th, 1939, it is understood and agreed that the trading limits in this policy are extended to include at and from ports and/or places in the United Kingdom and continent of Europe (ex-

cluding Russia) to ports and/or places in the United States."

By rider, attached to the marine policy, dated June 18, 1940, it was provided "Effective as to all shipments made on and after June 15th, 1940, it is understood and agreed the trading limits in this policy are extended to include at and from ports and/or places in the United Kingdom and continent of Europe (excluding Russia) to ports and/or places in the United States and/or Canada."

On October 17, 1939, by rider attached thereto, it clearly appears that the coverage of the war risk insurance policy was inferentially, if not directly, extended to imports into the United States.

After the issuance of the open policies, and prior to their cancellation, the plaintiff, or persons authorized by him, filed with the defendant fifteen "applications" or "declarations" as to shipments on which plaintiff wished insurance.

Two of these, the declarations being dated June 30, 1939, and July 7, 1939, respectively, described the shipments as fur cuttings, to be carried from New York to Paris and New York to London, respectively, and as to them, plaintiff does not now ask for recovery.

As to the other thirteen, 10 declared merchandise consisting of "furs", or "raw furs" or "raw rabbit skins" or "raw squirrel skins" or "Persian paws" or "mink tails", and 3 declared merchandise consisting of "hatters goods" and "leather or woolen sample goods".

One of the 10 above mentioned was the shipment of October 25, 1939, of furs on the Steamer Matra from New York to London, which was lost, and the defendant, on claim being made by the plaintiff, paid the loss, and for the premium on that application or declaration plaintiff does not now ask recovery.

In each of the said fifteen applications or declarations two things in particular were stated, towit: (1) The kind of merchandise involved, and as to which insurance was desired; and (2) the place from which the shipment moved, and the place to which it was going.

Each of those fifteen declarations was examined by the defendant, accepted, and entered on its books, and, as to each of them, the defendant computed the premium, and sent a bill for the premium to the

plaintiff, which the plaintiff paid. The total amount paid, for which recovery is now sought herein, being $5,970.28, of which $230.56 was paid on the marine policies, and $5,563.19 on the war risk policies.

Plaintiff seeks recovery in this case, on the theory, (1) that no shipments which were not for fur cuttings could be covered under the policies, because the marine policy stated that it covered "Merchandise consisting principally of fur cuttings"; (2) that no shipment moving to this country could be insured under said policy prior to the policy amendment, because the policy stated that it covered shipments made this country.

Plaintiff's theory has not been sustained, as I will point out.

Notwithstanding the fact that the plaintiff had signed the applications or declarations for insurance, and had signed, or authorized the signing in his behalf, of the applications for various endorsements, which were subsequently attached to the policy, and voluntarily paid the premiums, plaintiff seeks to avoid, and to escape the effect of such actions, by saying that he had merely "glanced over" the policies, and was ignorant of their provisions.

Plaintiff further contends that he received no enforcible insurance on the shipments in question, and therefore should have the premiums so paid returned to him.

In considering that contention of the plaintiff, we must not lose sight of the fact that in the only case in which plaintiff suffered a loss by the destruction ·of the property, the defendant, on plaintiff's claim, paid the amount in full, and that defendant has never denied that its policies covered the shipments in question.

Plaintiff wished to have the goods involved in the shipments here in question insured, and defendant has never questioned the fact that the goods were insured, and it seems to me that there was an agreement between the parties to insure shipments declared by the plaintiff to the defendant.

Obviously, the agreement to insure was confirmed by the following acts.

1. Defendant issued its policies.

2. Plaintiff declared and defendant issued its policies.

3. Defendant billed plaintiff for such insurance and plaintiff voluntarily paid such bills.

Plaintiff's contention that policies issued by the defendant were limited to coverage for fur cuttings is not sustained, as the policies insured "Merchandise consisting principally of fur cuttings."

The word "principally" can not be ignored, as it clearly showed an intention by the parties, not to limit the coverage to "fur cuttings" alone, but to extend its coverage to other articles used, or dealt in, in plaintiff's business, which might be agreed upon by the parties. Oklahoma Fire Ins. Co. v. McKey, Tex.Civ.App., 152 S.W. 440; Furlong & Meloy v. North British & Mercantile Ins. Co., 136 Iowa 468, 113 N.W. 1084.

The following cases, cited by the plaintiff, Wall v. Howard Ins. Co., 14 Barb., N.Y., 383; Storm v. Phenix Ins. Co., 61 Hun 618, 15 N.Y.S. 281, 284, affirmed 133 N.Y. 656, 31 N.E. 625; and Harper v. Albany Mutual Insurance Company, 17 N.Y. 194, 197, in support of the proposition that defendant is charged with knowledge of the usages of trade and what goods are usually kept by those engaged in a specific business, support the defendant's contention that where the policy, as in the case at bar, states that it is, and covers "On merchandise consisting principally of fur cuttings", the defendant is chargeable with the knowledge of, and insures, any and all shipments of merchandise used by the plaintiff in the conduct of his business.

The foregoing construction is not overcome by the clause in the policy, cited by the plaintiff, reading as follows: "Fur cuttings in cases, bales and cartons are insured", because the clause so cited by the plaintiff appears under the heading Average Terms (under deck), and is followed by the clause, applied by rubber stamp, reading as follows: "Warranted free from Particular Average unless * * *."

Which three clauses, read together in their order, clearly show that they did not restrict the coverage of the policy described by the earlier clause "On merchandise consisting principally of Fur Cuttings", but did warrant free from Particular Average Fur Cuttings in cases, bales and cartons under deck with certain exceptions not material here.

If, however, there be any question about that construction, and, by reason thereof there could be any conflict, or ambiguity, which is not conceded, then the parties

have placed a practical construction on the contract of insurance by the claim which was made by the plaintiff under the said policy for the loss of the cargo on the Steamship Matra, and the payment thereof, under the terms of the said policy by the defendant.

■ Even if there be any question as to the binding effect of the original policy, which is not conceded, it seems to me that each declaration represented in effect a new agreement, which was complete, as of the time of its acceptance, and clearly represented the agreement on which the minds of the parties met, and became binding. City of New York v. New York City R. Co., 193 N.Y. 543, 86 N.E. 565.

Those applications were, each of them, accepted by the defendant, and entered on defendant's books as being insured; plaintiff was billed by the defendant for the premiums for insurance on each application or declaration; the plaintiff voluntarily paid the premiums and defendant retained the same.

Both the applications, and the bills, showed all the facts necessary for a binding contract of insurance, with reference to each particular shipment, and that constituted a contract binding on both parties. Ellis v. Albany City Fire Insurance Co., 50 N.Y. 402, 408, 10 Am.Rep. 495; Van Loan v. Farmers' Mutual Fire Insurance Association, 90 N.Y. 280, 285.

■ In any event, even if the contract, as written, did not cover the insurance company, the defendant would have been estopped to assert that any of the declared merchandise was not insured. Each of the fifteen applications or declarations stated the kind of merchandise on which insurance was desired, and the place from which, and the place to which, such merchandise was being shipped.

With full knowledge of these facts, the defendant accepted each application, entered them as insurance on its books, retained the original application, and billed the plaintiff for the premium which the plaintiff voluntarily paid. The plaintiff wanted to have the merchandise insured; and obviously would have insured it with some other company, if the defendant had not accepted the applications.

The defendant led the plaintiff to believe that the shipments were insured, and plaintiff, relying on that belief, did not place the insurance elsewhere, and defendant would have been estopped to deny that it had so insured such shipments.

With the full knowledge as to all the facts given in such applications or declarations, and the collection of the premiums, and the leading of the plaintiff to believe his shipments were insured, the defendant could not have relieved itself from being estopped by the words in small type under its approval (if within the terms and conditions of the policy).

The defendant was estopped to assert that any of the declared merchandise was not insured. Block v. Columbian Insurance Co., 42 N.Y. 393, 401; McElwain v. Metropolitan Life Ins. Co., 50 App.Div. 63, 63 N.Y.S. 293.

All of the shipments declared by plaintiff were insured, and the plaintiff received protection under the declarations. International Ferry Co. v. American Fidelity Co., 207 N.Y. 350, 101 N.E. 160.

All of the shipments arrived safely, but one, and as to that plaintiff's claim, under the declaration and policy, was paid by defendant.

The policies were cancelled October 9, 1940, and this action was instituted on January 24, 1943. During all the time that elapsed between the issuance of the policies and the date of their cancellation, no question was ever raised by either the plaintiff, or the defendant, as to whether or not such shipments were insured, and no question of validity or existence of insurance was in fact ever raised, until raised by plaintiff in November 1942.

Plaintiff should not, at this late day, and under all the circumstances, be permitted to recover the premiums voluntarily paid by him, under the mutual agreement for insurance, which he intended to place, and which the defendant accepted and entered on its books, as insurance, and on one of which it paid the loss, and which I consider to have been good insurance. O'Connor Transp. Co., Inc., v. Glens Falls Ins. Co., 204 App.Div. 56, 197 N.Y.S. 549.

■ Plaintiff did not pay the premiums in question under a mistake of fact, as the shipments were insured, and the cases of In the Matter of Wing's Estate, 162 Misc. 551, 295 N.Y.S. 336; Hack v. American Surety Co. of New York, 7 Cir., 96 F.2d

939; and Bituminous Casualty Exchange v. Ford Elkhorn Coal Co., 243 Ky. 456, 48 S.W.2d 1057, are not in point.

The complaint herein should be dismissed, with costs.