WALKER *et al.* v. COLLINS *et al.*

*(Circuit Court of Appeals, Eighth Circuit. May 23, 1892.)*

No. 48.

1. JURORS—DISQUALIFICATION—PRIOR SERVICE AS TALESMAN.
   Under Rev. St. § 812, as amended by Act Cong. June 30, 1879, § 2, a juror called as a talesman is not subject to challenge merely because he has served as a talesman in another cause in the same court and term.

2. SAME—ADOPTING STATE PRACTICE.
   Act Cong. 1872, requiring federal courts to conform to state practice "as near as may be," only adopts such rules of state practice as are not inconsistent with any act of congress upon the same subject; and hence Code Civil Proc. Kan. § 270, enacting that prior service as a talesman in the same court and term shall be sufficient ground for challenge, is not binding on federal courts, it being otherwise provided by Rev. St. U. S. § 812.

3. OPINION EVIDENCE—VALUE OF GOODS.
   The purchaser of a stock of goods is competent to testify as to its value in an action against a marshal for wrongful attachment, where it appears that the purchaser had assisted in taking the invoice at the time of the purchase, and had been selling from the stock three days at the time of the seizure, and subsequently sold the balance not seized.

v.50F.no.9—47

4. WRONGFUL ATTACHMENT—DAMAGES.

  A *bona fide* purchaser of a stock of goods fraudulently sold by an insolvent debtor is entitled to all the goods purchased and paid for; and where a portion of the stock has been wrongfully attached by a marshal as the property of the vendor, the marshal cannot defeat an action for damages by showing an adjudication of a state court that after the seizure the goods still retained by the purchaser were of sufficient value to reimburse him for the purchase price actually paid.

5. SAME—REBUTTAL—EVIDENCE.

  Evidence as to the amount realized by the purchaser from the goods not seized, and the incidental expenses of the sale, may be introduced in rebuttal, for the purpose of meeting the claim of the marshal that the value of such goods was so largely in excess of the price paid as to show want of good faith on the purchaser's part.

6. SAME—EVIDENCE—ADMISSIBILITY.

  A wholesale merchant sold goods to a retailer, and the latter afterwards sold his whole stock to a third person. The merchant then sued for the price, and attached part of the stock as the property of the retailer, on the ground that his sale thereof was in fraud of creditors. *Held* that, in an action by the third person against the marshal for wrongful attachment, it was immaterial whether the purchase from the merchant was fraudulent, as by the form of his action he had affirmed the retailer's title; and the only question was whether there was such fraud in the sale to the third person as prevented title from passing to him.

7. FRAUDULENT CONVEYANCES—PURCHASER'S KNOWLEDGE—INSTRUCTION.

  On a question as to whether the purchase from an insolvent debtor for $6,000 of a stock of goods invoiced at $12,000 was in fraud of creditors, it is error to charge that to invalidate the sale the purchaser's knowledge of the vendor's fraud must be shown by circumstances or otherwise, without stating that, if the circumstances were such as to put the purchaser on inquiry, he would be chargeable with all the facts which due inquiry would have developed.

In Error to the Circuit Court of the United States for the District of Kansas.

At Law. Action by E. Collins and W. H. Bretch, trading as Collins & Bretch, against R. L. Walker, James McMurray, Charles Howard, and A. J. Partridge, for damages for wrongful attachment. Verdict and judgment for plaintiffs. Defendants bring error. Reversed.

*W. E. Brown* and *Willard Kline*, for plaintiffs in error.

*C. S. Bowman* and *C. Bucher*, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. From the record in this cause it appears that in the spring of 1890, and previous thereto, one Henry Cannon was engaged in the mercantile business at Newton, Kan. Becoming insolvent, he sold his entire stock of goods to the firm of Collins & Bretch, they agreeing to pay therefor 50 cents on the dollar of the cost marking. The goods invoiced about $12,000 at the cost price, for which the purchasing firm gave their check in the sum of $6,000. E. H. Van Ingen & Co., creditors of said Cannon, brought an action, aided by attachment, in the circuit court of the United States for the district of Kansas, for the purpose of recovering the debt due them from Cannon, and caused the writ of attachment to be levied upon part of the stock transferred to Collins & Bretch, who thereupon sued the marshal and his deputies for the damages caused them by such taking of the goods. The case was tried in the circuit court for the district of Kansas, and a verdict and judgment were rendered in favor of the plaintiffs, to reverse which the present writ of error was sued out from this court.

The principal question discussed by counsel in support of the errors alleged arises upon the ruling of the trial court in overruling a challenge made for cause by plaintiffs in error to a juror called as a talesman, the ground of challenge being that the person so called had, during the same term of said court, served as a talesman on the trial of another cause, and was therefore subject to challenge under the provision of section 270 of the Kansas Code of Civil Procedure, which enacts that service as a talesman on the trial of any cause in the same court and term is ground for challenge. The question for decision is whether this section of the Kansas statute is applicable to cases pending in a federal court of that state. The argument is that the act of congress of 1872 makes the state practice the rule for the guidance of the federal courts. If there was no legislation by congress upon the subject-matter, the argument might be conclusive; but it is well settled that the practice act of 1872 does not put in force the state statutes in regard to matters touching which congress has legislated. In that event, courts of the United States are bound to look to the act of congress as their guide, and the provisions of the state law are deemed inapplicable. Thus in *Ex parte Fisk*, 113 U. S. 713, 5 Sup. Ct. Rep. 724, it is said:

"But the act of 1789, which made the laws of the states rules of decision, made an exception when it was 'otherwise provided by the constitution, treaties, or statutes of the United States.' The act of 1872 evidently contemplates the same exception by requiring the courts to conform to state practice as near as may be. No doubt it would be implied, as to any act of congress adopting state practice in general terms, that it should not be inconsistent with any express statute of the United States on the same subject. There are numerous acts of congress prescribing modes of procedure in the circuit and district courts of the United States at variance with the laws of the states in which the courts are held. Among these are the modes of impaneling jurors, their qualifications, the number of challenges allowed to each party. * * * We think it may be further added, in the same direction, that if congress has legislated on this subject, and prescribed a definite rule for the government of its own courts, it is to that extent exclusive of any legislation of the states in the same matter."

Section 812 of the Revised Statutes of the United States declares that—

"No person shall be summoned as a juror in any circuit or district court more than once in two years, and it shall be sufficient cause of challenge to any juror called to be sworn in any cause, that he has been summoned and attended said court as a juror at any term of said court held within two years prior to the time of such challenge."

By the provisions of section 2 of the act of June 30, 1879, it is enacted that no person shall serve as a petit juror more than one term in any one year, thus shortening the time named in section 812. Section 812 declares that "it shall be sufficient cause of challenge to any juror called to be sworn in any cause that he has been summoned," etc.; thus including all persons called to be sworn, whether they are members of the regular panel or are called as talesmen. Thus we find that congress has by legislation determined when a person called to serve upon a jury may be challenged upon the ground of previous service in that capacity, and the rule prescribed by the state statute cannot, therefore, be made appli-

cable in the federal court. As it is not claimed that the juror who was challenged had been summoned and attended at any term prior to that at which he was called as a talesman, no ground of challenge existed under the provisions of the statutes of the United States, and the trial court did not err in overruling the challenge in question.

Several assignments of error are based upon the fact that Collins and Bretch, the plaintiffs in the action, were permitted to testify to the value of the goods taken by the marshal; the ground of objection being that it did not appear that they were qualified by previous experience to testify on the question of value. Both witnesses stated that they knew the character of the goods taken, and had been selling from the stock for a few days before the seizure by the marshal, and thought they knew the fair value thereof. From the evidence it appeared that these parties had aided in taking the invoice of the goods at the time of the purchase. They had been in possession, selling the goods, for three days before the levy by the marshal, and they had sold out the balance not taken under the writ of attachment, and hence it appeared that they had some means of knowing the value of the goods. Their testimony was therefore competent, the jury being the judges of the weight thereof, and the trial court did not err in admitting the same.

It was shown by the evidence that, after the levy of the attachment by the marshal, certain other creditors of Cannon had sued out a writ of attachment in the state court, and levied the same upon the remainder of the stock not seized by the marshal; that Collins & Bretch had replevied these goods in the state court, stating in an affidavit filed in such case that the goods so replevied were worth $6,000; that in the trial court judgment in the replevin suit was rendered in favor of Collins & Bretch.

In the case at bar the defendants below offered evidence tending to show that no appeal had or would be taken from the judgment thus rendered in the state court. Upon objection the court ruled that such fact was immaterial,. and rejected the evidence. Error is assigned on this ruling. The argument in favor of the admissibility of the evidence is that it is well settled that a *bona fide* purchaser of goods fraudulently sold by an insolvent debtor is only protected to the extent of the payment made up to the time of notice of the fraud by the vendor, and therefore in this case it was competent to show that the goods replevied from the sheriff were worth $6,000, and had been finally adjudged to be the property of Collins & Bretch. The premise does not justify the conclusion. If the purchase made by Collins & Bretch was valid, or, in other words, if they were *bona fide* purchasers for value, they became the owners, legally and equitably, of the goods transferred to them, and their interest therein cannot be limited to the amount paid by them. Under the rule claimed to be applicable to the case, it is not held that the *bona fide* purchaser for value is not the owner of and entitled to all the goods purchased in a given case; but if he receives notice of the fraud before completed payment of the purchase price is made, then he is required to withhold payment for the benefit of the creditors of the fraudulent vendor.

The facts of this case did not justify the application of the rule contended for, and hence the court did not err in rejecting the evidence offered.

It is further claimed that the trial court erred in admitting evidence showing what sum had been realized from the sale of the goods remaining after the marshal had made his levy, together with evidence of the expenses connected with the sale thereof. The theory upon which this evidence was admitted was that it would throw some light upon the question of the actual value of the goods sold by Cannon to Collins & Bretch. That question was certainly a material one in the case, for the adequacy or inadequacy of the price paid was a circumstance to be weighed by the jury in determining whether the purchase was or not made in good faith. The evidence tended to show that the goods were sold by Collins & Bretch in the ordinary way of business, and that due effort was made to realize their fair value, and the result thereof would certainly be some evidence upon the question of the fair market value of the goods thus disposed of; and, as we have already said, this value was a matter to be weighed by the jury in determining the validity of the sale to Collins & Bretch. The evidence objected to was introduced in rebuttal for the purpose of meeting the claim of defendants that the value of the goods sold was largely in excess of the price paid, and it was not error to admit it.

Several assignments of error are based upon the refusal of the court to give a number of requests submitted on behalf of the defendants. A radical error exists in all these requests, due to the fact that they are not applicable to the issues actually on trial before the court and jury. It will be borne in mind that E. H. Van Ingen & Co. had not sought to rescind the sale made by them to Cannon on the ground of fraud practiced on them, but had affirmed the sale, and had brought suit to recover the price of the goods sold, aided by attachment. The issue of fraud on trial in this cause, therefore, did not arise out of the facts of the purchase made by Cannon of Van Ingen & Co., but out of the sale made by Cannon to Collins & Bretch. No matter how much fraud existed in the purchase made by Cannon from Van Ingen & Co., if the latter did not choose to rescind the sale, but on the contrary affirmed it, then Cannon owned the goods by good title, and had the same right to sell the same as he had to sell the other portions of his stock. Holding the title thereto, the sale to Collins & Bretch passed the title to the latter, subject to the right of creditors to impeach such sale on the ground that it was in fraud of their rights. To show the theory involved in the instructions requested by defendants, it is only necessary to quote the third and fifth of the series, which are as follows:

"*Third.* If Cannon bought the goods in question, or any part of them, on the strength of false and fraudulent statements, and then sold and disposed of the same, and then used the money so obtained for the same to pay debts other than those incurred in the purchase of the goods, then such sale would be in law fraudulent, and the law would imply that it was made for the purpose of defrauding creditors."

"*Fifth.* If Cannon, by reason of false statements as to his financial standing, obtained the goods in question, or any part of them, and then sold them

for a sum less than sufficient to pay the debt incurred, on the strength of such false statements, and knew at the time, or had reason to believe, that he would not have money enough to pay for such goods, so obtained by false statements, then such sale would be in fraud of creditors, and such creditors would have the right of possession of such goods, unless they had passed into the hands of *bona fide* purchasers for value, without notice."

As already said, if Van Ingen & Co. did not assert a right to rescind the sale of the goods made by them, but on the contrary affirmed it, then the goods so purchased were the property of Cannon, and he had the right to make any lawful disposition thereof that he might choose, and if he sold the same, and applied the proceeds in the payment of debts owing by him, such sale would not, as a matter of law, be held to be fraudulent as to creditors; nor, under such circumstances, would the fact that the goods had originally been obtained by fraud from Van Ingen & Co. entitle the creditors of Cannon to the possession of the goods, as is claimed in the fifth request. It is clearly apparent that counsel for the defendants, in all the requests submitted, mistook the issues involved, and treated the case as though Van Ingen & Co. had rescinded the sale made by them, which is not true; and hence all the instructions asked were properly refused, and none of the assignments of error based on the refusal of the court to give these requests are well taken. The trial court rightly apprehended the issue that was involved, and rightly instructed the jury that the matter at issue was whether the sale and transfer made by Cannon to Collins & Bretch was fraudulent and void as to the creditors of the former.

The next question arising on the errors assigned is whether the court correctly instructed the jury on the question of good or bad faith on the part of Collins & Bretch in connection with the purchase made by them. The ninth instruction given by the court, and excepted to by the defendants, fairly presents the question, the instruction being as follows:

"No. 9. Even if you should find that it has been shown by the greater weight of evidence that, in making this sale to the plaintiff of the goods in question, Cannon intended to defraud his creditors, as the defendants claim, but that the plaintiffs had no knowledge or notice of such fraud, then in that case you are to find for the plaintiffs upon the propositions I have explained to you. In other words, to render this sale void, both the seller and buyer must have been acting in bad faith; and, if the plaintiffs bought from Cannon in good faith, they took a good title, whatever may have been the intention of Cannon; that is, in the absence of knowledge upon their part of any fraud or misrepresentations made by him."

The evidence introduced tended to show fraud on the part of Cannon, and this instruction, assuming that the jury might find the sale to be fraudulent on part of Cannon, then instructs the jury that they must find for the plaintiffs, if it appears that the plaintiffs had no knowledge of such fraud; and, further, that whatever may have been the intention of Cannon, the absence of knowledge upon their part of fraud or misrepresentation on part of Cannon would validate the sale to them. In the fifth instruction given by the court the jury were further instructed "that the evidence must show in some way, either by circumstances or

otherwise, to your satisfaction, that plaintiffs had knowledge of the fraud." In our judgment, these instructions are misleading, in that the jury must have understood therefrom that to defeat the sale on the ground of fraud actual knowledge of the fraudulent purpose of the vendor must be brought home to Collins & Bretch. True, it is stated that knowledge might be proved by circumstances, but still actual knowledge, proved directly or circumstantially, is the criterion furnished the jury for determining whether the vendees could be held to be participants in the fraud of the vendor. The jury was not instructed that if the purchase was made by Collins & Bretch under such circumstances as that the purchasers were thereby put upon inquiry as to the purposes of Cannon in making the sale to them, and instead of making inquiry they avoided doing so, then the jury would be justified in holding them chargeable with all the facts due inquiry would have developed. That such is the recognized rule in Kansas is settled by repeated decisions of the supreme court of that state. *Gollober* v. *Martin*, 33 Kan. 255, 6 Pac. Rep. 267; *Wafer* v. *Bank*, 46 Kan. 597, 26 Pac. Rep. 1032. See, also, *Jones* v. *Simpson*, 116 U. S. 609, 6 Sup. Ct. Rep. 538. A full and very clear statement of the general rule applicable to a question of this character is found in the opinion of CALDWELL, J., in *Singer* v. *Jacobs*, 11 Fed. Rep. 559. The facts of the case now before the court are such that the jury could not fairly decide the issue before them unless they viewed the facts in the light of the principle stated, and the court was therefore called upon to instruct the jury in regard thereto. The omission to properly instruct the jury in this particular made the instructions given and excepted to misleading, and therefore erroneous; and, as the error touches a vital issue between the parties, the judgment below must be reversed, and the cause be remanded to the circuit court, with instructions to grant a new trial.