LIVERPOOL & L. & G. INS. CO. v. McNEILL.[1]

(Circuit Court of Appeals, Ninth Circuit. May 11, 1898.)

No. 396.

1. RAILROAD RECEIVERSHIP—EFFECT ON PRIOR CONTRACTS—INSURANCE BY RE-CEIVERS.

The receivers of the Union Pacific Railroad System, which included the properties of several separate corporations, as receivers of one of such corporations insured its property, the schedule of property insured including that in a warehouse and yards in fact used by the receivers in the operation of its road, but owned by a terminal company. *Held*, that the fact that the company for whose benefit the insurance was taken had, prior to the receivership, transferred all its right to the use of the terminal company's property to one of the other companies, at the time of the insurance also represented by the receivers, did not invalidate the insurance as to property destroyed while in such warehouse and yards, as the effect of the receivership was to abrogate the contracts of each of the insolvent companies with the others so far as required by its individual interests or those of its creditors.

2. EVIDENCE—ADMISSIONS—STATEMENTS OF PREDECESSOR IN INTEREST.

In an action by the receiver of a railroad on an insurance policy covering property of the company, issued to former receivers, and assigned to plaintiff, statements or admissions made in a petition filed in court by such former receivers after the commencement of the present action are not admissible against plaintiff.

3. INSURANCE—CONSTRUCTION OF POLICY.

A policy of insurance upon the rolling stock of a railroad, "wherever it may be, * * * upon the line of the road hereby insured and its branches, spurs, side tracks, and yards owned or operated by the insured, * * * but this insurance shall not apply on the line of any road leased by the insured unless the name of such leased road is specified as being the insured in part under this policy," covers rolling stock which is destroyed in a yard "operated" by the insured in connection with its own line of road, but not owned by it, though the name of the owner of the yard is not specified.

4. CARRIERS OF GOODS—TERMINATION OF LIABILITY.

The liability of a railroad as carrier continues after the arrival of the goods in a freight yard at the city of their destination until they have been placed where they are at the disposal of the consignee, though the bill of lading provides that the carrier shall not be liable after the arrival of the goods at their destination.

5. SAME—LIMITATION OF LIABILITY—NEGLIGENCE.

A stipulation in a bill of lading that the carrier shall not be liable for loss or damage to the goods by fire does not exempt the carrier from liability where the goods are destroyed by fire through its negligence or the negligence of its employés.

6. INSURANCE—DEFENSES AGAINST LIABILITY—NEGLIGENCE OF INSURED.

A railroad company may recover on a policy of insurance covering goods in its possession as carrier, though the loss was due to the negligence of its own servants, and but for such negligence it would be protected by the terms of the bills of lading from liability to the shipper.

[1] Rehearing denied.

**7. SAME—ACTION ON POLICY—EVIDENCE.**

In an action by a railroad company on an insurance policy to recover for a loss by fire of goods which had remained in its yards for several days, evidence that the derrick with which goods in the yards were handled was out of repair, and could not be used, is admissible as tending to show that the goods were still held by plaintiff as carrier when destroyed.

In Error to the Circuit Court of the United States for the District of Oregon.

This action was brought by the receiver of the Oregon Railway & Navigation Company, to recover upon a policy of fire insurance issued by the plaintiff in error on December 30, 1893, to Messrs. S. H. H. Clark, Oliver W. Mink, E. Ellery Anderson, John W. Doane, and Frederick R. Coudert, who were then the receivers of said railway company. They had been appointed receivers of all the properties, rights, and interest of the several railroad corporations constituting what was then known as the "Union Pacific System." They were originally appointed in the circuit court of the United States for the district of Nebraska, and subsequently they were made ancillary receivers within the jurisdiction of the United States circuit court for the district of Oregon. On June 25, 1894, the defendant in error, by an order of the court last named, was made sole receiver of the property, rights, and interests of the said Oregon Railway & Navigation Company within the state of Oregon, in the place of the said S. H. H. Clark and others; and on October 1, 1894, said former receivers assigned to the defendant in error all their rights and interest under the said policy of insurance. By the terms of the policy, certain property of the Oregon Railway & Navigation Company was insured, in the sum of $1,866,500, against loss or damage by fire, for a period of one year from the date of the policy. On September 23, 1894, the fire occurred in the railroad yard known as the "Albina Yard," situated on the east side of the Willamette river, in Portland, Or., and destroyed various classes of property, to which reference will hereafter be made so far as may be necessary for the purposes of this opinion. The Albina yard was owned by the Northern Pacific Terminal Company, a corporation. By the terms of the policy, it was provided that the plaintiff in error "does insure S. H. H. Clark, Oliver W. Mink, E. Ellery Anderson, John W. Doane, and Frederick R. Coudert, receivers of the O. R. & N. Co., for account of whom it may concern; loss, if any, payable to said receivers." The Insurance Company, in its answer to the complaint, denied that S. H. H. Clark and others were receivers for the Oregon Railway & Navigation Company or its property, except by virtue of being receivers of the Union Pacific System, and denied that they were operating the Albina yard except as receivers of said system, which system included the Union Pacific Railroad, the Oregon Short Line & Utah Northern, and the Oregon Railway & Navigation Company. It alleged that by Schedule No. 10 of the policy it was expressly provided that the policy should cover rolling stock as described therein, owned by the insured, wherever it might be, upon the line of the road insured by said policy, and its branches, spurs, side tracks, and yards, owned or operated by the insured at the date of said policy, but that said insurance should not apply on the line of any road leased by the insured unless the name of such leased road was specified as being the insured under the policy; that Schedule No. 11 expressly stipulated that the policy should cover the interest and liability of the assured, as owners and common carriers, for goods while in or on cars on the line of the road, and its branches, spurs, side tracks, and yards owned or operated by the assured at the date of the policy, "but this insurance shall not apply on the line of any road leased by the insured unless the name of such leased road is specified as being the assured in part under this policy"; that all the goods and merchandise in transit for which loss is claimed under the policy were at the time of the fire upon the tracks of the yard leased by the assured from the Northern Pacific Terminal Company, which was the owner of the said yard, and that the Oregon Railway & Navigation Company had, long prior to the appoint-

ment of Clark and others as receivers, leased and assigned all its right, title, and interest in the said railroad tracks and in said yard, and in its entire line of roads, to the Oregon Short Line & Utah Northern Railway Company, and that the Short Line Company was at the time of the appointment of the receivers operating exclusively for itself the said yard and the tracks thereon and the said general lines of the road so leased, and was so operating the same through said receivers at the date of said policy. Upon a trial of the cause before a jury, a verdict was rendered for the plaintiff in the sum of $72,171.03. for which sum and the costs judgment was entered. ·

R. & E. B. Williams, W. W. Thayer, and Henry St. Rayner, for plaintiff in error.

Cox, Cotton, Teal & Minor, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The principal contention of the plaintiff in error is that the court erred in ruling, as a matter of law, that the receivers, Clark and others, who were the insured under the policy, were at the time of taking out said insurance operating the Albina yard as the receivers of the Oregon Railway & Navigation Company, whereas the court should have ruled that they were receivers of the Oregon Short Line & Utah Northern Railway Company, citing Ames v. Railway Co., 74 Fed. 337. On inspecting the record, however, it does not appear that the court so ruled upon the law of the case, or so instructed the jury. It is true that the court stated to counsel that, in his opinion, it was quite immaterial where the title to the insured property was if, as a matter of fact, the receivers were operating the road as the property of the Oregon Railway & Navigation Company, or for account of that company, or for the account of the creditors who were interested in the fund; but at the same time he expressly informed them that he should submit to the jury the question whether the company was in fact operating the yards. Accordingly, in the instructions to the jury it was said:

"I submit to you, gentlemen, the question whether or not these receivers at the time of this insurance, and McNeill at the time of the loss, were operating this warehouse or these yards at the Albina yard as the property of the Oregon Railway & Navigation Company, stating to you at the same time that as to the question of title it is not a material one. It does not matter who owned these yards. The question is, were these receivers and was McNeill operating them as a part of the system of the Oregon Railway & Navigation Company's lines?"

Nor do we find from a consideration of the decision of the case of Ames v. Railway Co., 74 Fed. 337, that the court held in that case, or that it must be deduced from the decision, that Clark and others took the Albina yard as receivers for the Oregon Short Line & Utah Northern Railway Company, or operated it on account of that company. That was a decision rendered in May, 1896, subsequently to the commencement of the present suit, and was heard on exceptions of the trustee for the bondholders of the Denver, Leadville & Gunnison Railway Company (a road which connected with the Union Pacific Company) to the report of the

master charging the deficiency arising from the operation of the roads of that company as a preferential claim upon the property of the former company. The court said of the receivers who had been appointed of the Union Pacific System:

"They were in the hands of the court, preserving and operating the properties in their charge under its direction. Moreover, these receivers held the property of the Union Pacific Railway Company, the property of the Gunnison Company, and the property of each of the other railroad companies in their hands as receivers in this case, under a trust imposed upon the property of each of these corporations by the law. They held the property of each of these corporations under a trust, separate, distinct, and different from the trust under which they held the property of every other one of these corporations. * * * If it was for their advantage to operate its railroad as a part of the Union Pacific System, then it was the duty of the receivers to so operate it. If that course was not to their interest, then it was the duty of the receivers to operate it otherwise. They were bound, under the law, and the trust which it imposed upon them, to manage and operate the railroads of each of these corporations for the benefit and in the interest of the stockholders and creditors of that corporation."

Not only is there competent evidence in the record tending to show that the receivers, Clark and others, from the time of their appointment, operated the Albina yard for and on behalf of the Oregon Railway & Navigation Company, but the policy itself shows clearly that the Insurance Company, at the time of making the contract of insurance, understood that the property was operated for that company. They assumed the risk upon that understanding. In the schedule in which the "depot of the N. P. Terminal Co." and the "Albina Warehouse" are listed, it is stated that these schedules belong to the policy issued by the Insurance Company to S. H. H. Clark and others, receivers "for Oregon Railway & Navigation Company, for account of whom it may concern; loss, if any, payable to said receivers." The Northern Pacific Terminal Company was incorporated for the purpose of furnishing terminal facilities to certain railway companies which enter the city of Portland. One of these companies was the Oregon Railway & Navigation Company. That company had deeded to the Terminal Company a large portion of the Albina yard and certain railway tracks which it had constructed thereon. After the conveyance it had no terminal facilities in the city of Portland except the Albina yard and the terminal facilities afforded it by the Northern Pacific Terminal Company on the west side of the Willamette river. There was testimony in the case that the road would be entirely worthless without the use of these yards. The plaintiff in error, in its answer in the case, alleged that the Oregon Railway & Navigation Company leased the Albina yard from the Terminal Company; and, when it leased its property to the Oregon Short Line Company, it assigned and leased all of its right in the Albina yard, including its right under its contract with the Northern Pacific Terminal Company in relation to that yard. The effect of the appointment of receivers in the Ames Case was undoubtedly to dissolve the contractual relations between the Oregon Railway & Navigation Company and the Oregon Short Line & Utah Northern Railway Company. On no other theory can the lan-

guage which we have quoted from the opinion of the court in Ames v. Railway Co., supra, be explained. The receivers so understood the decree of the court appointing them as such officers, and the Insurance Company, in entering into the contract of insurance, so understood the attitude of the receivers to the property which was in their charge. We find no error, therefore, in the charge as given, nor in the refusal of the court to instruct the jury that S. H. H. Clark and his co-receivers were operating the yard as the receivers of the Short Line Company at the time of taking out the policy of insurance.

It is assigned as error that the court excluded Exhibits 12 and B, offered by the Insurance Company on the trial, to establish that the Albina yard was owned by the Terminal Company. Exhibit No. 12 so offered was the petition of the defendant in error for leave to issue $500,000 of receiver's certificates. The petition does not tend to prove any of the facts for which it was offered in evidence on the trial, as it is now claimed in the brief of the plaintiff in error, except that it indicates that the title to the Albina yard was in the Terminal Company, and that at the time of the appointment of Clark and others as receivers the Short Line was operating the yard under its lease from the Oregon Railway & Navigation Company, and under the leases made to that company and to the Short Line by the Terminal Company. These facts were not denied by the defendant in error, and were not in issue. It cannot be claimed for the petition that it tends to prove that Clark and others, when appointed receivers, entered into the operation of the yard as receivers of the Short Line. It does show, however, that the defendant in error was applying at that time for leave to issue receiver's certificates upon the Oregon Railway & Navigation Company's property, to discharge the indebtedness which the receivers of the Union Pacific System had incurred to the Terminal Company in operating the yard from the time of their appointment until the appointment of the defendant in error. There was no error, therefore, in excluding the petition, nor in excluding Exhibit B. The latter was a petition of S. H. H. Clark and others, made after the commencement of the present action, signed only by their solicitor, reciting the facts on which they sought an order of court authorizing them to settle accounts and differences with the defendant in error. No statement or admission made in such a paper could affect the rights of the parties to the present suit, and the paper was not admissible for any purpose.

It is assigned as error that the court excluded the agreement of lease of date January 28, 1895, which was entered into between the Terminal Company and others and the defendant in error. Considering the issues made by the pleadings, and the purport of this proffered instrument, we are unable to see how it was material to the case, nor how the plaintiff in error has been prejudiced by its exclusion. It recites that on December 14, 1882, a lease had been made between the Oregon Railway & Navigation Company and the Northern Pacific Terminal Company; that on June 3, 1890, an agreement had been made between the Northern

Pacific Terminal Company and the Oregon Short Line & Utah Northern Railway Company, and recites that the latter company and its receivers and the Oregon Railway & Navigation Company and its receivers have, for more than 30 days, failed to pay the agreed rental under said leases, and that the Terminal Company has thereupon elected to forfeit the rights of both said railway companies under the leases, and that such forfeiture was made on August 20, 1894. It then sets forth a stipulation that the defendant in error, as receiver of the Oregon Railway & Navigation Company, shall pay $170,725.40, which is the aggregate of the unpaid rental due the Terminal Company under said two leases up to the date of the present agreement, and declares that the defendant in error shall, during his receivership, enjoy the rights conferred upon the Oregon Short Line & Utah Northern Railway Company by said two agreements. There is nothing in the instrument which tends even to contradict the contention of the defendant in error that the receivers, Clark and others, entered into the possession of the property of the Oregon Railway & Navigation Company for and on behalf of that company, and operated it as such.

It is further contended by the plaintiff in error that it is not liable under the policy for property destroyed in the Albina yard, listed under Schedules 10 and 11, for the reason that Schedule 10 covered rolling stock owned by the insured and rolling stock which is the property of other roads only while "upon the line of the road" of the Oregon Railway & Navigation Company, and its branches, spurs, side tracks, and yards, owned by it at the date of the policy, but did not apply to property on any premises leased by the insured; and that Schedule No. 11 covered the interest of the insured as owners or common carriers of goods while in or on cars on the line of the Oregon Railway & Navigation Company, and its branches, spurs, side tracks, and yards, owned by the assured at the date of the policy, but not in or on cars on roads or premises leased by the assured. In Schedule No. 10 it is specified as follows:

"$892,800 on rolling stock as described below, owned by the insured, which is to be covered wherever it may be, whether in any engine or car house or repair shed or otherwise, upon the line of the road hereby insured, and its branches, spurs, side tracks, and yards, owned or operated by the insured at the date of this policy, and upon such extensions or branches as may be constructed by or for the insured during the term of this policy; but this insurance shall not apply on the line of any road leased by the insured, unless the name of such leased road is specified as being the insured in part under this policy."

In short, it is contended that there is no liability under these schedules unless the premises on which the loss occurred were at the date of the policy owned or operated by the assured, and that upon premises operated and not owned by the Oregon Railway & Navigation Company there was no liability unless the premises were specified as being insured in part under the policy; and it is urged that at the date of the policy the Short Line Company was the lessee and owner, under contract, of the Albina yard, under its contract with the Terminal Company, and that the Albina yard

was not owned or leased by the Oregon Railway & Navigation Company, and that the latter company had no right, title, interest, or possession in the yard at the date of the policy, and the yard and the property therein were not specified as being insured in part under the policy. We do not think the clause in the schedule is susceptible of the construction which is claimed for it by the plaintiff in error. The intention of the contracting parties is clearly expressed, to insure property upon the Oregon Railway & Navigation Company's line of road, and the branches, spurs, side tracks, and yards owned or operated by it. The Albina yard was a yard operated, but not owned, by the company at that time. It would not come under the designation of a leased road, such as it was stipulated should not be covered by the insurance unless specified in the policy. From the use of the words "owned and operated" it is evident that the contracting parties had in mind an operation of a road distinct from the ownership thereof. It is clear from the language first employed, specifying after the words "the line of road" the "branches, spurs, side tracks, and yards," that, if the intention had been to exclude liability for loss of property in a leased yard, spurs, or side track, those words would have been repeated in the latter clause of the provision. The Insurance Company issued the policy upon a printed form prepared by itself, and therein it expressed the exception which it reserved to the declaration of its general liability upon the line of road and the spurs, side tracks, and yards, whether owned or operated by the insured. It confined the exception to leased roads not specified in the policy. The term "line of road," standing alone, may be sufficiently comprehensive to include spurs, yards, and side tracks; but when it is followed by the specification of spurs, yards, and side tracks it must be concluded that there was a purpose in employing the added words, and that the contracting parties meant by "line of road" no more than the words strictly construed will import, and that they referred to a line of road as contradistinguished from spurs, yards, and side tracks. If the Albina yard had belonged to or was a portion of a road leased by the Oregon Railway & Navigation Company, and that road had not been mentioned in the contract of insurance, there would be ground for the plaintiff in error's contention. The yard itself was not a road or a line of road. It is the general rule that insurance policies shall be liberally interpreted in favor of the insured, and that doubtful provisions are to be construed against the insurer. 1 Wood, Ins. § 58; National Bank v. Insurance Co., 95 U. S. 673; Grace v. Insurance Co., 109 U. S. 278, 282, 3 Sup. Ct. 207.

It is assigned as error that the court overruled objections of the plaintiff in error to testimony offered to show destruction by the fire of certain goods in freight cars standing in the Albina yard, which had been consigned from Lynn, Mass., and from Dayton, Ohio, and that the court instructed the jury that for the loss of said goods in the Albina yard they might find the Insurance Company liable under the policy. The goods were sent by the consignors, and were received by the defendant in error, under bills

of lading which stipulated that the railroad companies by which the goods might be carried should not be liable for loss or damage by fire, nor should be liable as common carriers after the arrival at the destination of the goods, provided that "property not removed by the person or party entitled to receive it, within twenty-four hours after its arrival at destination, may be kept in the car, depot, or place of delivery of carrier at the sole risk of the owner of said property." It is contended by the plaintiff in error that, by virtue of these stipulations, the defendant in error became as to these consignments of goods an ordinary bailee and a private carrier for hire, and that when the goods arrived at the Albina yard, and there awaited the convenience of the consignee in sending for them, his liability of carrier was changed into that of a warehouseman. There was evidence before the jury tending to show that the shipment from Dayton was destined to Oregon City, and at the time of the fire it had been 13 days in the Albina yard, and no effort had been made to forward it to its destination; that the goods shipped from Lynn, Mass., were loaded in nine cars, three of which were consigned to Portland, and six to Oregon City; and that accompanying these cars were waybills issued by the Union Pacific receivers at Council Bluffs, showing the destination of all cars to be Portland; and that the consignee, on being notified of the arrival of the goods, informed the freight agent at Portland that, if all of said cars were billed to Portland, there was some mistake. There was evidence that the bills of lading at that time had not arrived, and that all of the cars so sent from Lynn were held in the Albina yard owing to the fact that it was not known which of the cars were destined to Oregon City, and which to Portland. The cars were placed upon a trestle, where they could not be unloaded, but still remained there three days after information was received by telegraph of the correct destination of the cars. None of the goods were actually delivered or attempted to be delivered to the consignee, either at Portland or at Oregon City. The testimony all shows that freight destined to Portland was not delivered to consignees in the Albina yard, but from there was carried across the Willamette river, and delivered on the grounds of the Terminal Company. It appears from this statement of the facts that the goods had not reached the point where they were at the disposal of the consignee or awaited his convenience in receiving them, and that the liability of the carrier, whatever degree of liability that was, had not been changed on account of the arrival of the goods at the Albina yard. Hutch. Carr. §§ 371, 378. If it is true that the goods embraced in these two consignments were destroyed through the negligence of the agents of the defendant in error, the clauses in the bills of lading exempting carriers from liability on account of fire are insufficient to relieve the defendant in error from liability.

Said the court in Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 322, 6 Sup. Ct. 755:

"No rule of law or of public policy is violated by allowing a common carrier, like any other person having either the general property or a peculiar

interest in goods, to have them insured against the usual perils, and to recover for any loss from such perils, though occasioned by the negligence of his own servants. By obtaining insurance, he does not diminish his own responsibility to the owners of the goods, but rather increases his means of meeting that responsibility."

### In the case at bar, the court, in instructing the jury, said:

"If you find from the evidence that either the plaintiff or his employés failed to exercise such care, and that failure to exercise such care was the cause of the destruction of such property by fire, then the plaintiff is liable for such property, notwithstanding such exemption from liability for losses by fire. The negligence of the plaintiff or any of his employés in respect to any of such property will not prevent a recovery in respect of such property by the plaintiff against the defendant, under the policy of insurance sued on in this action."

There was evidence which went to the jury tending to show negligence on the part of the defendant in error. It tended to show that, notwithstanding that the premises where the fire occurred were very dry, and had taken fire several times, the appliances for extinguishing fires were in a bad condition; that the hose was worthless; and that the cars were placed in an unsafe position, and on tracks from which it was difficult to remove them in case of fire; and that the agents of the defendant in error were negligent in their efforts to remove the cars from the dangerous position in which they were, after the fire had begun. It was the province of the jury, upon the facts submitted and the charge of the court, to find whether there was such negligence as would render the defendant in error liable notwithstanding the stipulations of the bills of lading, and it is not our province to say whether or not the evidence was sufficient to sustain the verdict. We find no error in the admission of the evidence or in the charge of the court upon that branch of the case.

It is contended that the court erroneously admitted in evidence the dispatch which was sent to the defendant in error informing him which of the cars included in the consignment from Lynn were intended for Portland, and which for Oregon City, and in admitting evidence that the derrick in the Albina yard was out of repair. It is urged that this evidence was incompetent to show that the Insurance Company was liable for the gross negligence of the defendant in error in failing to deliver the property which was consigned to Portland, and to forward the property which was destined for Oregon City. We cannot see how the evidence was subject to the objection. The evidence concerning the bill of lading was admissible, because it tended to show that, during the whole of the period during which the cars included in the consignment from Lynn remained in the Albina yard, they were in possession of the defendant in error, and were awaiting proper instructions for their disposition. So, the evidence concerning the derrick being so out of repair that the goods could not be unloaded from the cars was competent as tending to show that the property included in the Dayton consignment was held at the Albina yard by the defendant as a common carrier, and that his relation as a

carrier had not ceased. We discover in the record no error for which the judgment of the circuit court should be reversed. The judgment will be affirmed.