FURLONG & MELOY v. NORTH BRITISH & MERCANTILE INSURANCE COMPANY of Edinburgh and London, Appellant.

**Insurance:** PROOF OF LOSS: COMPETENCY OF EVIDENCE. One familiar
1   with a stock of merchandise prior to its damage and partial
   destruction by fire is competent to testify to the quality and
   value of the goods damaged and destroyed; and the fact that

he bases his testimony on an invoice of the stock as it existed before the fire at the cost price on the goods which are distinguishable after the fire, and his recollection of the quality and value destroyed, only affects the weight of his evidence; and an inventory made by the insurance company based upon the estimates so made represents the evidence of competent witnesses as to the cost and quality of the goods.

**Same.** A computation of damage by fire to a stock of goods based on insured's annual inventories for a series of years and his book accounts, while competent, is not conclusive and will not deprive the jury of the right to base their judgment of the loss upon testimony supported by inventories taken after the fire; especially where the annual inventories were taken simply to estimate profits and the fire occurred at the season when the heaviest stock was carried.

**Property insured:** DESCRIPTION. A specific description of goods covered by an insurance policy will control general provisions as to goods for which the company will be liable in case of loss.

**Evidence of good faith.** Where there was a controversy between an insured and the company over the disposition of some of the damaged goods covered by an inventory thereof, it was competent to show a specific agreement to a sale of all such inventoried goods to a salvage company, as bearing upon the good faith of insured in delivering the same.

**Evidence:** ADMISSION OF MEMORANDUM. An inventory of goods taken after a fire, the basis of the testimony of witnesses as to the quality and value of goods damaged and destroyed, is admissible as a portion of the testimony, although the same was made in part from the recollection of the witnesses testifying to its correctness.

*Appeal from Webster District Court.*— HON. J. H. RICHARD, Judge.

TUESDAY, DECEMBER 10, 1907.

ACTION to recover for a loss under a policy of fire insurance. Verdict and judgment for the plaintiffs, and defendant appeals.— *Affirmed.*

*Carr, Hewitt, Parker & Wright* and *Kenyon & O'Connor,* for appellant.

*Healy Bros. & Kelleher,* for appellee.

McCLAIN, J.— The policy sued on was one of ten policies in different companies, aggregating in amount $12,-800, covering plaintiffs' stock of merchandise, consisting mainly of dry goods, notions, furnishing goods, carpets, etc., at Ft. Dodge, Iowa, which was damaged by fire on December 22, 1904.   On defendant's policy, which was for $2,000, the jury gave plaintiffs a verdict for $1,865.75, thus finding the amount of the damage to the stock for which the companies were liable to have been about $12,000.   As the value of the salvage is shown by the evidence, without substantial dispute, to have been about $4,500, the jury must have estimated the value of the stock at about $16,500.   The sole question submitted to the jury was as to the amount of plaintiffs' recovery.   The defendant offered after the action was brought to confess judgment for about $1,509 or on the basis of the valuation of the stock before the fire at about $14,000.

I.   The principal controversy between the parties is as to the basis of computation of the value of plaintiffs' stock. Immediately after the fire, one Meloy, a member of the plaintiff firm, with the assistance of Miss Furlong, also a member of the firm, and two clerks, proceeded to make an inventory of the stock as it had existed before the fire, including at cost price all the goods which could be distinguished, other goods which had entirely disappeared, or which, as Meloy testified, he remembered to have been in the stock, and a class of goods consisting of cloaks, suits and furs, which were almost entirely destroyed, by adding to the inventory of that class of goods at the beginning of the year the amount of purchases and deducting the amount of sales as determined by the credit charges for sales of that class of goods, and assuming that the cash sales were of equal amount.   This inventory constituted therefore Meloy's estimate of the amount and value of plaintiffs' stock just before the fire,

1. INSURANCE: proof of loss: competency of evidence.

and constituted affirmative evidence of one more familiar with the extent and value of the stock than any one else could be, by personal knowledge, tending to show its value to have been somewhat in excess of $17,000. The method of taking the inventory, as testified to by Meloy, was corroborated by the testimony of those who assisted him in making it.

When this inventory was presented to the adjuster for defendant, one Wood, he insisted that what he desired was an inventory of the salvage, and thereupon it was agreed between Meloy and Wood that persons selected by the insurance companies should make another inventory of that character. Thereupon three persons called by Wood in the interests of the insurance companies, one of whom was Armstrong, proceeded to make an inventory, including goods which were distinguishable at cost prices shown by the tags and measuring quantities, where there had been a partial destruction, and rejecting all goods which, even though distinguishable, were so far damaged as to be of no substantial value. This inventory, which is called the "Armstrong Inventory," included goods the cost price of which had been, according to the estimates of those making it based on the plaintiffs' marks, about $12,000. The remnants not included in the Armstrong inventory were gathered together and put in the basement, and the goods which were included in that inventory were by mutual consent of plaintiffs and the insurance companies sold to a salvage company for $4,500. The remnants which were taken to the basement, not having been included in the Armstrong inventory and the sale to the salvage company, were produced in court. The witnesses testified as to the number of articles and the value of each, so far as identification was possible. The criticism of the evidence furnished by the testimony based on these two inventories is: First, that Meloy restored cost prices on some of the goods from which the tags had been burned, in accordance with his recollection; that he added to his inventory

some goods which were not found, also from recollection; and that his cost tags were accepted in making the Armstrong inventory without question. As to the first two objections, it is sufficient to say that Meloy was perfectly competent to testify as to quantities and values, and the means resorted to by him in determining amounts and values were only subject to be questioned as affecting the weight of his testimony. As to the third objection, it was open to the persons selected by the insurance companies to obtain information as they should see fit with reference to the proper cost marks, of the goods which they inventoried, and, if they saw fit, to accept the cost marks of plaintiffs, including those restored by Meloy. The inventory, nevertheless, represented the evidence of competent witnesses with reference to the quantities of goods found and the cost thereof.

But the defendant, although conceding the competency of the evidence based on these two inventories as to goods which had constituted plaintiffs' stock, now insists that a wholly different class of evidence relied upon by it was of such controlling weight that the jury should have disregarded the testimony based on these two inventories made after the fire, and should have found the value of the entire stock not to exceed $14,000. The evidence thus relied on by defendant is that furnished by the testimony of one Burnap, an expert accountant, who based his computation on the annual invoices of the plaintiffs for fifteen years and the books of account, showing, as he claimed, that plaintiffs had at no time during that period had a stock of goods of above the value of about $13,000, and that the invoices of goods bought between the time of the taking of the annual inventory in January, 1904, and the time of the fire, did not show any larger amount of purchases than in former years. The competency of Burnap's evidence is not now questioned, but we are unable to agree with counsel for defendant that it was so far conclusive that the jury were not justified in basing their judgment as to

2. SAME.

values on the testimony which is supported by the inventories taken after the fire. The whole question of value was for the jury, and, if there was competent evidence giving substantial support to their verdict, we should not interfere. While it has been held that the inventories, invoices, and books of the insured furnish competent evidence as to the extent and value of his stock, it has never been held, so far as we can discover, that such evidence is as a matter of law controlling as against other evidence tending to show the amount and value of goods actually on hand at the time when the fire occurred. *Read v. State Ins. Co.,* 103 Iowa, 307; *Helm v. Anchor Fire Ins. Co.,* 132 Iowa, 177; *Doane v. Garretson,* 24 Iowa, 351; *State v. Tennebom,* 92 Iowa, 551; *Western Home Ins. Co. v. Richardson,* 40 Neb. 1 (58 N. W. 597); *Orient Ins. Co. v. Moffat,* 15 Tex. Civ. App. 385 (39 S. W. 1013); *Graves v. Merchants' Ins. Co.,* 82 Iowa, 637; *Walker v. Collins,* 50 Fed. 737 (1 C. C. A. 642). Some of these cases, it is true, simply sustain the competency of general estimates made by witnesses as to the value of a stock of goods which has been damaged or destroyed; but even these cases support the testimony of Meloy, and conceding that, in the absence of any such testimony as that relied upon by defendant, the showing would have been sufficient to support the verdict, we are not justified in saying that the deductions made by Burnap are so far conclusive as to require the jury to accept them to the exclusion of the evidence introduced for plaintiffs.

Two suggestions are entitled to consideration with reference to Burnap's testimony. In the first place, it was based on inventories taken by plaintiffs from year to year simply for the purpose of estimating their profits. There is nothing in the policy making such inventories conclusive, though their production on demand of the company is provided for. These annual inventories were made while the business of plaintiffs was being continued, and by the persons who were at the time in charge of sales to customers, so that it was

evidently impracticable to make them as complete and conclusive as the inventories made after the fire, and while the premises were closed, so far as the number and quantity of the goods actually found was involved. In the second place, the fire occurred just before the holiday season, and it may well be surmised, as indicated by the evidence, that the sales for the next few days would have represented much more than the proportional amount of the sales for the year. It is also to be noticed that the Armstrong inventory corroborates the Meloy inventory as against the deductions of Burnap, for defendant's counsel are insisting that the testimony, based on the previous inventories, invoices, and books of account, is so conclusive that the jury should not have given weight to the testimony founded on the Meloy and Armstrong inventories. In an action for a fire loss, where the loss is not total, and the amount of damage is therefore to be determined, it is usually a matter of considerable difficulty to secure a perfectly satisfactory basis on which to found a verdict. There is usually great conflict in the estimates of witnesses, and the best that can be done is to allow the jury to follow its best judgment in the light of all the competent testimony offered. In this case the jury may very well have found that the proof as to the quantity and value of goods not included in the Armstrong inventory, but represented by fragments and remnants produced before them or shown to have been totally destroyed, was sufficient to warrant a verdict as rendered. We do not feel called upon to go into the details of this evidence, but simply announce our conclusion.

II. The printed portion of the policy contained a provision that the company should not be liable for loss on account of patterns and pictures, and the testimony showed

3. Property
INSURED:
description.

that the plaintiffs, had on hand as part of their stock patterns and pictures on which the loss included in their claim for recovery amounted to between $300 and $400. But the specific de-

scription of the property insured was of plaintiff's "stock of merchandise consisting mainly of dry goods, notions, ladies' and gents' furnishing goods, carpets, rugs, manufacturers' and fur goods, oil cloths and all such other goods as is usually kept for sale in a dry goods store."   Such specific description must control general provisions as to goods for which the company will be liable.   19 Cyc. 658.   That is to say, although patterns and pictures in general belonging to plaintiffs and used in their business or for decoration or otherwise were excluded, yet, so far as patterns and pictures constituted part of the stock of goods described, they were included as portions of the stock covered by the policy.   *Adams v. Fire Ins. Co.,* 85 Iowa, 6; *Lovewell v. Fire Ins. Co.,* 124 Mass. 418 (26 Am. Rep. 671); *Liverpool Ins. Co. v. McNeill,* 89 Fed. 131 (32 C. C. A. 173).

III.   Certain telegrams relating to the sale of the goods covered by the Armstrong inventory to the salvage company were received in evidence over the defendant's objection; but in this there was no error.   There was

4. EVIDENCE OF
GOOD FAITH.

a contention during the introduction of the evidence that some of the goods covered by the Armstrong inventory might have been taken to the basement and included among the remnants introduced on the trial as representing goods not included in that inventory. It was competent to show that plaintiffs specifically agreed to the sale of all goods covered by the Armstrong inventory to the salvage company, for in the face of such agreement it could only be claimed that the goods so included were not delivered to the salvage company on the supposition that plaintiffs had violated their specific agreement for the sale and delivery of such goods.   In view of this agreement, a presumption would certainly arise that the plaintiffs acted honestly in delivering to the salvage company all of the goods to which it was entitled, and this presumption was entitled to some weight in determining whether any portions of the goods which the plaintiffs undertook to sell to

the salvage company were in fact retained by them in violation of their agreement. Collateral documents or conversations throwing light on the situation of the parties may be admissible, although they do not directly affect the rights of the parties. *Kocher v. Palmetier,* 112 Iowa, 84; *Blomgnen v. Anderson,* 48 Neb. 240 (67 N. W. 186); *Platner v. Platner,* 78 N. Y. 90; *Parker v. Coburn,* 10 Allen (Mass.) 82.

IV. The objections to the introduction in evidence of the Meloy inventory and an invoice by plaintiffs of the goods taken to the basement were properly overruled. These

5. EVIDENCE: admission of memorandum.

simply furnished the foundation for the testimony of the witnesses making such inventories, and were admissible as a portion of such testimony. *Casey v. Banking Co.,* 98 Iowa, 107; *State v. Brady,* 100 Iowa, 191; *Bradley v. Chesebrough,* 111 Iowa, 126. Even if these lists or so-called inventories or invoices were made purely from recollection, they would not be on that account inadmissible, as portions of the testimony of witnesses who testified that they were correct.

Other objections made to the rulings of the court as to the introduction of evidence and as to the correctness of instructions have been considered, but found not to be well taken; and, as we do not think them to be of sufficient importance to justify a discussion, we need not specifically refer to them.

Finding no error in the record, the judgment of the trial court is *affirmed.*